No. 23-211C
(Judge Dietz)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NICK BASSEN, et al.,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF
SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

OF COUNSEL:

HOLLY K. BRYANT
Litigation Attorney
U.S. Army Legal Services Agency

KYLE S. BECKRICH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-9322
Fax: (202) 305-7644
Kyle.Beckrich@usdoj.gov

October 20, 2023

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

ARGUMENT ..................................................................................................................1

I.  Plaintiffs' Claims Under Count I Fail Because The FY 2023 NDAA Is Not Money-Mandating, And The Plaintiffs Can Show No Violation Of The Statute ...........................1

    A.  The NDAA Is Not Money-Mandating ..................................................................1

    B.  The NDAA Does Not Provide Retroactive Relief.................................................5

II.  Plaintiffs' Claims Under Count II Fail Because Plaintiffs Lack Standing And Otherwise Fail To State A Claim ....................................................................................................7

III.  Plaintiffs Fail To State Claims Under Count III ............................................................10

IV.  Four Plaintiffs Are Not Entitled To Any Relief Under The Military Pay Act Regardless Of Any Alleged Violations Of 10 U.S.C. § 1107a Or RFRA And Fail To State A Claim Under Counts II And III..................................................................................................12

V.  Plaintiffs' Claims Under Count IV Fail Because Plaintiffs Do Not Allege Any Money Was Illegally Exacted From Them..................................................................................16

VI.  Plaintiffs Do Not Assert A Claim For A Violation Of 10 U.S.C. § 1552 .......................17

CONCLUSION..............................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Agility Pub. Warehousing Co. K.S.C.P. v. United States,*
969 F.3d 1355 (Fed. Cir. 2020) .............................................................................7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................10, 12

*BP America Production Co. v. United States,*
148 Fed. Cl. 185 (2020) ...................................................................................5

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014).......................................................................................10

*Collins v. United States,*
101 Fed. Cl. 435 (2011) ...................................................................................3

*Davis v. United States,*
108 Fed. Cl. 331 (2012) ..............................................................................8, 11

*Doe #1-#14 v. Austin,*
572 F. Supp. 3d 1224 (N.D. Fla. 2021).............................................................9

*Faerber v. United States,*
156 Fed. Cl. 715 (2021) ............................................................................14, 15

*Fern v. United States,*
15 Cl. Ct. 580 (1988) ...................................................................................5, 6

*Groves v. United States,*
47 F.3d 1140 (Fed. Cir. 1995) ........................................................................13

*Hicks v. Merit Sys. Prot. Bd.,*
819 F.3d 1318 (Fed. Cir. 2016) ........................................................................5

*Klingenschmitt v. United States,*
119 Fed. Cl. 163 (2014) .................................................................................12

*Lohmann v. United States,*
154 Fed. Cl. 355 (2021) .................................................................................15

*Lopez-Velazquez v. United States,*
85 Fed. Cl. 114 (2008) ...................................................................................14

*Lummi Tribe of Lummi v. United States,*
99 Fed. Cl. 584 (2011) .....................................................................................4

*Mendez-Cardenas v. United States,*
   88 Fed. Cl. 162 (2009) .................................................................. 8, 11, 14, 15

*Metz v. United States,*
   466 F.3d 991 (Fed. Cir. 2006) ............................................................... 14

*New York & Presbyterian Hosp. v. United States,*
   881 F.3d 877 (Fed. Cir. 2018) ................................................................. 2

*Radziewicz v. United States,*
   167 Fed. Cl. 62 (2023) ......................................................................... 13

*Reilly v. United States,*
   93 Fed. Cl. 643 (2010) ......................................................................... 12

*San Antonio Housing Authority v. United States,*
   143 Fed. Cl. 425 (2019) ......................................................................... 4

*Sargisson v. United States,*
   913 F.2d 918 (Fed. Cir. 1990) ............................................................... 13

*Small v. United States,*
   158 F.3d 576 (Fed. Cir. 1998) ................................................................. 6

*Smith v. Sec'y of the Army,*
   384 F.3d 1288 (Fed. Cir. 2004) ....................................................... 14, 15

*Striplin v. United States,*
   100 Fed. Cl. 493 (2011) ......................................................................... 3

*United States v. White Mountain Apache Tribe,*
   537 U.S. 465 (2003) ............................................................................... 2

*Vartelas v. Holder,*
   566 U.S. 257 (2012) ............................................................................ 5, 7

## Statutes

10 U.S.C. § 1107a ..................................................................... passim

10 U.S.C. § 1174 ............................................................................. 3

10 U.S.C. § 1552 ........................................................................... 17

10 U.S.C. § 12313 ......................................................................... 13

42 U.S.C. § 2000bb-1 ............................................................... 10, 12

37 U.S.C. § 303a ................................................................................................................... 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| NICK BASSEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 23-211 |
| v. | ) | (Judge Dietz) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF
SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, submits this reply in support of its motion

to dismiss plaintiffs' claims for lack of jurisdiction and failure to state a claim (Def. Mot.).  We

respectfully request that the Court dismiss each of plaintiffs' claims.

**ARGUMENT**

**I.    Plaintiffs' Claims Under Count I Fail Because The FY 2023 NDAA Is Not Money-
Mandating, And Plaintiffs Can Show No Violation Of The Statute**

**A.    The NDAA Is Not Money-Mandating**

As we set forth in our motion, this Court lacks jurisdiction over Count I of plaintiffs'

complaint, which alleges a violation of section 525 of the James M. Inhofe National Defense

Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72

(2022) (NDAA).  Because Count I is based on a stand-alone violation of section 525 of the

NDAA and because this section is not money-mandating, plaintiffs' claims must be dismissed.

While plaintiffs assert in their reply that section 525 of the NDAA is money-mandating,

they fail to engage at all with the language of this section.  But that is what the Court must look

1

to in determining if the statute can fairly be interpreted as mandating compensation. *See New York & Presbyterian Hosp. v. United States*, 881 F.3d 877, 882 (Fed. Cir. 2018). As we explained in our motion, nothing in the language of section 525 can be interpreted as mandating compensation for service members affected by the vaccination requirement retrospectively or prospectively. Def. Mot. at 12-13. Nor do plaintiffs engage with the extensive legislative history cited in our motion. *See* Def. Mot. at 13-15. Yet, where there are "strong indications that Congress did not intend to mandate money damages," the Court should not find that a statute is money mandating absent an express damages provision. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 478 (2003). Accordingly, plaintiffs fail to meaningfully respond to our arguments as to why section 525 of the NDAA is not money-mandating.

Instead, plaintiffs argue that the NDAA is money-mandating because plaintiffs are entitled to pay under the Military Pay Act and that courts have held that previous versions of NDAAs were money-mandating. As to their first point, we have not argued that the Military Pay Act is not money-mandating. Nor we have argued that the Court lacks jurisdiction to consider whether an alleged violation of the NDAA could result in an entitlement to pay under the Military Pay Act. Indeed, plaintiffs make that claim under Count II. *See* Am. Compl. ¶ 200 ("The Military Pay Act, in conjunction with . . . the 2023 NDAA Rescission, . . . is fairly interpreted as a 'money-mandating' source of federal law."). But under Count I, where plaintiffs allege they are entitled to relief *solely* based on an alleged violation of section 525 of the NDAA, they must show that section 525 of the NDAA itself is money-mandating, which they cannot do.[1]

---

[1] Even though the Court has jurisdiction to consider whether a violation of the NDAA results in an entitlement to pay under the Military Pay Act, we have explained that, for multiple reasons, plaintiffs cannot state a claim under the Military Pay Act. *See infra* Sections II-IV. Because the Court lacks jurisdiction over a stand-alone claim under the NDAA, all of plaintiffs'

As to their second point, the fact that *some* NDAA provisions may have been money-mandating does not support plaintiffs' contention that section 525 is money mandating.  First, plaintiffs rely on *Collins v. United States*, 101 Fed. Cl. 435 (2011), for the proposition that "[t]his Court has routinely found provisions of previous NDAAs . . . to be 'money mandating.'"  Pl. Resp. at 3.  In *Collins*, the Court considered whether 10 U.S.C. § 1174, which was amended by the 1991 NDAA, is money-mandating.  101 Fed. Cl. at 443.  The Court held that section 1174 is money-mandating, noting that the statute provides that "the concerned servicemember '*is entitled to separation pay computed under subsection (d) unless* the Secretary concerned determines that the conditions under which the member is discharged do not warrant payment of such pay.'"  *Id.* at 457 (quoting 10 U.S.C. § 1174(b)(1)).  Here, the language of section 525 of the NDAA provides no entitlement to pay and instead merely directs the Secretary of Defense to rescind the vaccination requirement.  NDAA § 525.  Accordingly, *Collins* is inapposite, and fails to support plaintiffs' implicit assertion that all NDAA provisions – no matter the specific language of those provisions – are money-mandating.

Likewise, plaintiffs' reliance on *Striplin v. United States*, 100 Fed. Cl. 493 (2011), is misplaced.  Pl. Resp. at 2.  The provisions of the 2007 NDAA in *Striplin* specifically addressed raising a pay limitation.  100 Fed. Cl. at 500 ("the [FY 2007 NDAA] provides the authority to waive the pay limitation up to $212,100 in 2007").  Even so, this did not end the Court's analysis, because the NDAA provisions on which the plaintiff in *Striplin* relied were discretionary.  *Id.* at 499, 500 (finding that statutes are not money-mandating when "they vest discretion in the Government to authorize an increase in pay, instead of mandating such

---

claims based on an alleged violation of the NDAA – either directly or in reliance on the Military Pay Act – should be dismissed.

increases"). Only after the Court determined that DoD had exercised its discretion by identifying criteria to determine whether an employee was eligible for the increased pay limitation did the Court find that this particular provision of the 2007 NDAA was money-mandating. Here, as we have explained, any such pay mandate is completely absent from section 525 of the NDAA.

Finally, *San Antonio Housing Authority v. United States*, 143 Fed. Cl. 425 (2019), and *Lummi Tribe of Lummi v. United States*, 99 Fed. Cl. 584 (2011), are similarly of no help to plaintiffs' NDAA claims. Pl. Resp. at 3. In *San Antonio Housing Authority*, the provisions of the statute at issue specifically addressed monetary assistance by prohibiting diminishment of monetary assistance for certain operating and grant subsidies. 143 Fed. Cl. at 475. Because the plaintiff sought damages for a violation of the specific language in that statute, the Court held that the statute was money-mandating and that it possessed jurisdiction. *Id.* at 476. *Lummi* considered whether a statute that provided that the Secretary of the Department of Housing and Urban Development "shall . . . make grants" and "shall allocate any amounts" among Indian tribes was money-mandating. 99 Fed. Cl. at 594. Because the statute required the Secretary "to pay a qualifying tribe the amount to which it is entitled under the formula," the Court held the statute was money-mandating. *Id.* at 594, 597. Once again, these statutory provisions are wholly distinguishable from section 525 of the NDAA, which makes no reference to any monetary entitlement for servicemembers who failed to comply with the vaccination requirement.

In short, far from supporting plaintiffs' burden of showing that section 525 of the NDAA is money mandating, the cases invoked by plaintiffs underscore that section 525 lacks the type of language that is required to render a provision money mandating. Accordingly, Count I should be dismissed for lack of jurisdiction.

**B.**     __The NDAA Does Not Provide Retroactive Relief__

Count I should also be dismissed for failure to state a claim, given that the NDAA does not provide retroactive relief. While plaintiffs make several arguments as to why the NDAA should be treated as retroactive, none are availing.

First, plaintiffs argue that the text, purpose, and legislative history of the NDAA show that it should be applied retroactively. But the text of the NDAA, combined with the presumption against retroactivity and the NDAA's legislative history, compels the opposite conclusion. Def. Mot. at 15-18.

This Court, the Federal Circuit, and the Supreme Court have all held that statutes are presumptively not retroactive unless Congress has "unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012); *Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1321 (Fed. Cir. 2016); *BP America Production Co. v. United States*, 148 Fed. Cl. 185, 195 (2020). Plaintiffs argue that the presumption does not apply to remedial or curative statutes, and that the NDAA is a "textbook example" of a curative statute that should be applied retroactively. Pl. Resp. at 10 (quoting *Fern v. United States*, 15 Cl. Ct. 580, 591 (1988)). In *Fern*, however, the Court considered whether it should give retroactive application to a statute that was *expressly* retroactive. 15 Cl. Ct. at 586-87. The Court noted that the statute, which was enacted in September 1982, was meant to apply to "pay periods beginning after June 25, 1981," well over a year earlier. *Id.* Accordingly, *Fern* does not stand for the proposition that all allegedly curative statutes should be applied retroactively, even absent a clear indication that they were intended to be retroactive.

Given that the presumption against retroactivity applies here, the Court must look to see if Congress unambiguously instructed section 525 of the NDAA to apply retroactively. Plaintiffs

argue a single word – rescind – provides that unambiguous instruction.[2]  But as we have explained, that one word is far from an unambiguous instruction of retroactivity.  Def. Mot. at 17-18.  Moreover, plaintiffs' reliance on that single word is further undermined by the NDAA's legislative history.  *Id.*  While plaintiffs argue little weight should be given to that legislative history, they notably do not point to *any* legislative history indicating that Congress intended section 525 of the NDAA to apply retroactively.

Second, plaintiffs argue that failing to apply section 525 of the NDAA retroactively would create "a two-tier payment structure, where some [servicemembers] are made whole, while others similarly situated receive nothing."  Pl. Resp. at 11.  Plaintiffs seemingly contend that as a matter of policy, the Court should apply section 525 retroactively so that servicemembers are not treated differently.  However, plaintiffs fail to explain how any servicemembers are being treated differently.  The terms of the NDAA are being applied to all servicemembers as none are required to receive the COVID-19 vaccination any longer under the Secretary of Defense's prior directive.  Moreover, even if there were policy concerns about a non-retroactive application of the NDAA, those policy concerns are not a basis for ignoring the text of the statute or Congress's intent.  *Small v. United States*, 158 F.3d 576, 580 (Fed. Cir. 1998) (citations omitted) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

---

[2]  Plaintiffs also argue we fail to explain why Congress chose to use the word "rescind" rather than "repeal."  Pl. Resp. at 8.  But plaintiffs confuse the burden.  The burden is on plaintiffs to overcome the presumption against retroactivity.  Further, applying plaintiffs' own logic, plaintiffs fail to explain why Congress chose to use the word "rescind," rather than expressly state the NDAA is retroactive, if Congress intended the NDAA to have retroactive effect.

Third, plaintiffs' reliance on the fact that DoD has provided some retroactive relief to argue that the NDAA is retroactive is a red herring.  The question before the Court is not whether DoD and the services could provide any retroactive relief to unvaccinated service members. Instead, the pertinent question is whether Congress unambiguously intended section 525 of the NDAA to have a retroactive effect.  As we have made clear, the presumption is *against* retroactivity, *Vartelas*, 566 U.S. at 266, and plaintiffs have failed to point to any language or legislative history to negate that presumption.  Accordingly, that the statute does not prohibit the granting of retroactive relief does not support plaintiffs' argument that the statute *mandates* retroactive relief.

Finally, plaintiffs argue that the United States is judicially estopped from arguing that section 525 of the NDAA does not authorize retroactive backpay.  Plaintiffs rely on the district court litigation involving the vaccination requirement, where plaintiffs challenged the requirement itself.  The United States argued in those matters that that once that requirement was rescinded, those plaintiffs were no longer required to receive a COVID-19 vaccine and their claims became moot.  We are not aware of any case in which the United States has previously addressed whether section 525 of the NDAA entitles unvaccinated service members retroactively to backpay, much less has argued that it does.  Accordingly, estoppel is unwarranted because the United States has not advanced a position here that is "clearly inconsistent" with a prior position. *Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1368 (Fed. Cir. 2020) (quotation omitted).

## II.     Plaintiffs' Claims Under Count II Fail Because Plaintiffs Lack Standing And Otherwise Fail To State A Claim

In our motion to dismiss, we demonstrate that plaintiffs cannot establish that they have standing to bring a claim for relief based on a purported violation of 10 U.S.C.

7

§ 1107a.  Specifically, we argued that plaintiffs did not allege facts showing that they would have received a fully licensed vaccine if it was available to them.  Def. Mot. at 20-21.  Further, because the vaccination mandate did not require plaintiffs to receive a vaccine authorized for emergency use, it did not implicate (or violate) section 1107a.  Def. Mot. at 21.

In response, plaintiffs argue that: (1) they "inquire[d] as to the availability of FDA-licensed products from commercially available sources off base" and that none were available; (2) the military services did not have any fully licensed vaccines until June 2022; and (3) once again the United States should be judicially estopped from making its arguments.  None of these arguments have merit.

First, allegations included for the first time in plaintiffs' response or plaintiffs' declarations do not amend their complaint.  *Mendez-Cardenas v. United States*, 88 Fed. Cl. 162, 166-67 (2009) (holding that a complaint "may not be amended by the briefs in opposition to a motion to dismiss"); *Davis v. United States*, 108 Fed. Cl. 331, 337 n.4 (2012) (holding that the Court will not consider allegations not raised in a complaint).  But even if those allegations are considered, they still do not establish that plaintiffs have standing.  In order to show that their harm has a "causal connection" to the conduct complained of, plaintiffs must allege facts that (1) no fully licensed vaccine was available to them at the time they suffered the alleged harm, and (2) they would have received such a fully licensed vaccine had it been available.  They still do not adequately allege these facts.   With respect to the availability of a fully licensed vaccine, neither declaration provides any detail as to when Mr. Rodriguez or Mr. Wynne inquired as to what vaccines could be obtained through commercial sources.  *See* ECF No. 23-8 at 4; ECF No. 23-10 at 3.  Moreover, because no plaintiff pleads that they would have received a fully licensed vaccine had it been available, they are unable to show how the alleged unavailability of a fully

licensed vaccine contributed to their harm.  Given plaintiffs' expressed opposition to the vaccine, it cannot be assumed that plaintiffs would have agreed to take any COVID-19 vaccine (absent an allegation to that effect) – and thus plaintiffs still have failed to allege that a violation of section 1107a caused their claimed harm.

Second, plaintiffs' argument that they state a claim based on the vaccine availability dates pled in the complaint should be rejected.  Plaintiffs point to their allegation that the earliest any "Comirnaty-labeled" or "Spikevax-labeled" vaccines were available through the services was June 2022.  Plaintiffs fail to explain why the six plaintiffs – Mr. Bassen, Mr. Chisholm, Mr. Dailey, Mr. Davis, Mr. Rodriguez, and Mr. Wynne – who allege adverse action was taken against them in June 2022 or later are able to state a claim when the alleged violation of section 1107a was, by their own admission, apparently cured at the time the adverse action was taken.  Am. Compl. ¶ 130 ("Defendants were mandating EUA vaccines, in violation of 10 U.S.C. § 1107a, at least until June 2022").  But even setting that issue aside, plaintiffs cannot state a claim for a violation of section 1107a because the vaccine requirement provided that service members were required to receive only "COVID-19 vaccines that receive full licensure . . . in accordance with FDA-approved labeling and guidance."  ECF No. 1-2 at 1.  As another court considering this exact issue noted, "on its face, the mandate does not require anyone to take an EUA vaccine."  *Doe #1-#14 v. Austin*, 572 F. Supp. 3d 1224, 1233 (N.D. Fla. 2021).  The vaccination requirement likewise did not require service members to receive the vaccine from a DoD source. So even if a fully licensed vaccine was not available in June 2022, plaintiffs have still not pled a violation of section 1107a, because nothing in the vaccination requirement mandated the use of anything other than licensed vaccines.

Third, plaintiffs' judicial estoppel argument is once again misplaced.  Although plaintiffs assert that the Government has taken inconsistent positions on when fully licensed vaccines became available to the services, at this stage of the litigation, we have not asserted any facts as to when and where particular vaccines were available.  Instead, our arguments are based on both the facts set forth by plaintiffs and a plain reading of the vaccination requirements, which has been adopted in other courts.  It is plaintiffs' burden to state a claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When the challenged requirement facially complies with section 1107a, and plaintiffs do not allege facts showing that the requirement, as applied to them, violated the statute, they do not meet their burden.

## III. <u>Plaintiffs Fail To State Claims Under Count III</u>

As we explained in our motion, seven of the ten plaintiffs in this case fail to allege that they submitted a religious accommodation request (RAR) or otherwise attempted to obtain relief from their respective services.  Def. Mot. at 22.  In order to state a claim under the Religious Freedom Restoration Act (RFRA), plaintiffs must allege that the challenged policy substantially burdened a sincerely held religious belief.  42 U.S.C. § 2000bb-1; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694-95 (2014).  Those seven plaintiffs failed to allege either facts showing the vaccination requirement burdened any sincerely held religious belief when they did not attempt to obtain an accommodation, or facts establishing that it would have burdened them to seek an accommodation.

Plaintiffs attempt to cure these defects in their claims by attaching declarations from all of the plaintiffs explaining that (1) they did submit an RAR (even though the complaint fails to allege such facts), or (2) they had a reason for not submitting an RAR.  *See* Pl. Resp. at 22-23.  But, as noted, plaintiffs' complaint "may not be amended by the briefs in opposition to a motion

to dismiss." *Mendez-Cardenas*, 88 Fed. Cl. at 166-67; *Davis*, 108 Fed. Cl. at 337 n.4 (holding

that the Court will not consider allegations not raised in a complaint).  Indeed, our argument

under RFRA was not new; we made it in response to plaintiffs' original complaint.  *See* ECF No.

11 at 19-23.  Yet, plaintiffs failed to include these new allegations even in their amended

complaint. They should not be permitted now to try to use allegations, which have twice been

omitted from their complaints, to defeat a motion to dismiss.

Nor do plaintiffs' citations to district court cases granting injunctive relief change the

analysis in this case.  Plaintiffs argue that numerous district courts have held that submitting an

RAR was unnecessary for those courts to consider claims under RFRA because the "religious

accommodation process . . . was futile and/or inadequate."  Pl. Resp. at 26.  Even assuming

plaintiffs' claims do not suffer from an exhaustion problem, plaintiffs still must allege facts

showing that the vaccination requirement substantially burdened a sincerely held religious belief.

For those plaintiffs who did not submit an RAR, there are simply no facts pled regarding a

sincerely held religious belief or how that belief was burdened, much less any reference to the

fact that they believed filing an RAR would be futile or inadequate.

Mr. Chisholm likewise fails to state a claim under RFRA.  Mr. Chisholm asserts that

"[h]is [RAR] and his appeal were denied on February 16, 2022," Am. Compl. ¶ 17, but alleges

no other facts with respect to his RAR.  The singular fact that he had an RAR (and subsequent

appeal) denied does not state a claim for any relief.  Indeed, he does not allege any defects in the

substance or procedure of the denial.  To be sure, plaintiffs generally allege that the military has

"adopted a policy of systematically denying [RARs] using form letters, without providing the 'to

the person' individualized determinations required by RFRA."  Am. Compl. ¶ 231.  But Mr.

Chisholm makes no allegation that such a policy applied in his case or that the denial of his RAR

was wrongly decided.  Accordingly, he does not allege that the vaccination requirement

substantially burdened a sincerely held religious belief.  *See* 42 U.S.C. § 2000bb-1.  As we noted

in our motion, conclusory and generalized allegations that the vaccination requirement violated

RFRA are insufficient to state a claim.  *See Twombly,* 550 U. S. at 555 (a pleading must do more

than just offer "a formulaic recitation of the elements of a cause of action").

Because the complaint does not contain facts demonstrating that eight[3] of the ten

plaintiffs harbored any religious objection to the vaccine or had an RAR wrongly denied, those

plaintiffs fail to state a claim for relief under Count III.

### IV.   Four Plaintiffs Are Not Entitled To Any Relief Under The Military Pay Act Regardless Of Any Alleged Violations Of 10 U.S.C. § 1107a Or RFRA And Fail To State A Claim Under Counts II And III

As explained in our opening brief, reserve members are not entitled to backpay for

unperformed duties "even where the lack of performance was involuntary and improperly

imposed." *Reilly v. United States*, 93 Fed. Cl. 643, 649 (2010).  Because three of the four

reserve members (Mr. Chisholm, Mr. Endress, and Mr. Hall) do not allege that they performed

any work for which they were not compensated, we explained that they are not entitled to any

relief for the time in which they were on inactive status.  Def. Mot. at 27.  In response, plaintiffs

argue that they can state a claim because they are not alleging entitlement to backpay for the time

---

[3]   As explained in our motion, RFRA is not money-mandating and thus a RFRA claim can only be brought in this Court "in connection with a claim or defense that is otherwise within the jurisdiction of the court." *Klingenschmitt v. United States*, 119 Fed. Cl. 163, 185 (2014). Accordingly, plaintiffs' claims under RFRA require a showing that the Military Pay Act was violated in order to state a claim.  As explained below, the other two plaintiffs, Mr. Hall and Mr. Rodriguez, fail to state a claim under the Military Pay Act even if they could allege a violation of RFRA.  *See infra* Section IV.

they did not work, but instead are challenging their involuntary releases from active duty.[4]  This argument, however, does not help the three plaintiffs in stating claims under the Military Pay Act.

A reserve member can "state a claim for backpay if they were participating in full-time active duties until the government's wrongful action." *Radziewicz v. United States*, 167 Fed. Cl. 62, 68 (2023).  However, under 10 U.S.C. § 12313(a), "the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty."  The Federal Circuit has noted that the statute does not place any procedural or substantive limitations on the Secretary's discretion to release a reserve member from active duty, *Sargisson v. United States*, 913 F.2d 918, 921 (Fed. Cir. 1990), and that the Secretary's decision "is largely beyond judicial review." *Groves v. United States*, 47 F.3d 1140, 1145 (Fed. Cir. 1995).  That discretion is only limited if "the Secretary promulgated regulations and instructions and made them the basis for [the reserve member's release from active duty.]" *Sargisson*, 913 F.2d at 921.  In that case, "his action bec[omes] subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." *Id.*

Plaintiffs claim that Mr. Chisholm, Mr. Endress, and Mr. Hall were each removed from active duty "due to his unvaccinated status."  Am. Compl. ¶¶ 17, 20, 21.  No plaintiff alleges that he was removed from active duty despite being vaccinated.  Accordingly, in removing Mr. Chisholm, Mr. Endress, and Mr. Hall from active duty, the Secretary concerned complied with the instructions that served as the basis for their removal. *Sargisson*, 913 F.2d at 921; *Groves*, 47 F.3d at 1145.

---

[4]  We understand that these claims for backpay are thus limited to the remaining time on their active-duty orders once they were removed from active-duty service.

To be sure, plaintiffs argue that the Secretary should not have permitted the removal of reserve members from active duty on the basis of vaccination status at all.  That argument fails for several reasons.  First, as we have explained, the vaccination requirement violated neither the NDAA nor 10 U.S.C. § 1107a.  Second, plaintiffs have not shown why the vaccination requirement should not have applied in the circumstances of their removals.  No plaintiff alleges that he was in fact vaccinated and thus that the requirement was incorrectly applied to them.  And as explained above, Mr. Chisholm and Mr. Endress are unable to state a claim that the vaccination requirement, as applied to them, violated RFRA.  Mr. Endress fails to allege that he submitted an RAR at all.  Mr. Chisholm alleges he submitted an RAR and that it was denied, Am. Compl. ¶ 17, but he does not allege any defects in the substance or procedure of that denial.

Third, even if Mr. Hall could state a claim for a violation of RFRA, he does not allege facts to overcome the presumption that his retirement was voluntary.  *See Faerber v. United States*, 156 Fed. Cl. 715, 757 (2021) ("Courts generally presume a resignation or retirement to be voluntary."); *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1295 (Fed. Cir. 2004) ("[I]f the service member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not impose on the government any continuing obligation to pay the service member."); *Lopez-Velazquez v. United States*, 85 Fed. Cl. 114, 136 (2008) ("It is well-established that the court must presume that [a] plaintiff's separation was voluntary.") (citing *Metz v. United States*, 466 F.3d 991, 999-1000 (Fed. Cir. 2006)).  The only allegation found in the complaint regarding Mr. Hall's retirement is that "he was forced to retire."[5]  Am. Compl. ¶ 21.  That allegation, alone, is insufficient to overcome the presumption of voluntariness, even

---

[5]  Mr. Hall attaches a declaration to plaintiffs' response to our motion to dismiss.  As explained above, plaintiffs' complaint "may not be amended by the briefs in opposition to a motion to dismiss."  *Mendez-Cardenas*, 88 Fed. Cl. at 166-67.

at the motion to dismiss stage. *Faerber*, 156 Fed. Cl. at 727 (describing the showing that must be made to establish that a retirement is involuntary).

Because Mr. Hall cannot show that he involuntarily retired, and because Mr. Chisholm and Mr. Endress cannot show that the vaccination requirement was improperly applied to them, those three reserve members fail to state a claim under the Military Pay Act.

Like Mr. Hall, Mr. Rodriguez also fails to state a claim under the Military Pay Act because he voluntarily separated from the Air Force. Mr. Rodriguez attaches a declaration disputing the timeline of his discharge that *he set forth* in the amended complaint to show that he was never afforded the protections of the *Doster* injunction. *Compare* Am. Compl. ¶ 23 (alleging that he was wrongfully discharged on September 6, 2022) *with* ECF No. 23-8 at 5-6 (alleging that he was involuntarily separated on July 14, 2022). As we have explained, his declaration does not amend his complaint. *Mendez-Cardenas*, 88 Fed. Cl. at 166-67. Further, in our motion we showed that Mr. Rodriguez specifically stated that he was "willing to separate from the military." ECF No. 22 at 52. He thus cannot state a claim under the Military Pay Act. *Smith*, 384 F.3d at 1295.

There is no merit to plaintiffs' argument that the potential class action nature of their amended complaint requires a result that differs from the established law discussed above. Contrary to plaintiffs' contention, if a class were certified in this case, each member of the class would still have to show an entitlement to backpay. *See Lohmann v. United States*, 154 Fed. Cl. 355, 370 (2021) ("Determining entitlement . . . under Plaintiffs' FY 2015 claim will likely require an individualized assessment of each proposed class member's orders . . . ."). That plaintiffs propose that this case may be suitable for class certification does not relieve them of their burden to sufficiently plead their claims.

In sum, Mr. Chisholm, Mr. Endress, Mr. Hall, and Mr. Rodriguez fail to state a claim under the Military Pay Act regardless of the underlying violation upon which their claims are allegedly based, and their claims must be dismissed for this independent reason.

## V.      Plaintiffs' Claims Under Count IV Fail Because Plaintiffs Do Not Allege Any Money Was Illegally Exacted From Them

In our motion to dismiss, we explained that plaintiffs failed to allege that the Government took money from them that they seek to have returned, and that to the extent that they do make such allegations, they do not allege that any money was *illegally* taken from them.  Def. Mot. at 28-29.  In response, plaintiffs once again rely on declarations in an attempt to amend their complaint.[6]  *See* Pl. Resp. at 28-29.  Because those declarations cannot amend the complaint, the Court is left with only a single allegation from Mr. Bassen on which to base this claim. Mr. Bassen alleges that he seeks "cessation of the government's signing bonus recoupment against him."  Am. Compl. ¶ 16.

This single allegation does not state a claim for illegal exaction for two reasons.  First, given that he seeks "cessation" of the alleged recoupment, it is not clear that he has actually paid any money to the Government.  Second, even if he has, Mr. Bassen does not identify any violation of law that would render such action illegal.  When a service member receives a bonus that is subject to certain eligibility requirements, the member "shall repay to the United States an amount equal to the unearned portion of the bonus or similar benefit if the member fails to

---

[6]  Even if the Court considered the declarations, only Mr. Davis alleges that any money was taken from him.  *See* Pl. Resp. at 28-29.  But those allegations do not constitute an illegal exaction.  Mr. Davis states that a debt was created for Servicemembers' Group Life Insurance (SGLI) Plan premiums that went unpaid while he was not drilling.  ECF No. 23-4 at 2-3. Mr. Davis does not allege that his SGLI coverage lapsed or challenge the contractual basis for his requirement to pay SGLI premiums, which resulted from his election of SGLI coverage. Accordingly, Mr. Davis has not alleged any illegal action and cannot state a claim for an illegal exaction.

satisfy the eligibility requirements."  37 U.S.C. § 303a(e).  Mr. Bassen makes no allegations concerning his eligibility for his bonus and thus fails to state a claim that the alleged recoupment of that bonus is illegal.

**VI.**      **Plaintiffs Do Not Assert A Claim For A Violation Of 10 U.S.C. § 1552**

In their response brief, plaintiffs clarify that "they do not assert a stand-alone claim under Count V and that any relief requested thereunder would be an incident of and collateral to an award of money judgment under Counts I-IV."  Pl. Resp. at 29.  Accordingly, plaintiffs' claims under Count V, based on a "violation of 10 U.S.C. § 1552," should be dismissed.

**CONCLUSION**

For these reasons and those set forth in our motion to dismiss, we respectfully request that the Court dismiss this case for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

OF COUNSEL:

s/ Kyle S. Beckrich
KYLE S. BECKRICH
Trial Attorney

HOLLY K. BRYANT
Litigation Attorney
U.S. Army Legal Service Agency

Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-9322
Fax: (202) 305-7644
Kyle.Beckrich@usdoj.gov

Dated: October 20, 2023

Attorneys for Defendant